# EXHIBIT A



## FIFTH THIRD BANK

### COMMERCIAL CARD SERVICE
### COMPANY AGREEMENT

This AGREEMENT (the Agreement) is entered into by and between Fifth Third Bank (Bank) and the undersigned Client (Client) in connection with the Commercial Card Service (the Service) that Bank agrees to provide to Client pursuant to the Agreement upon its execution. The undersigned, each being an officer, owner, principal or other authorized individual of the Client, hereby represent that each is duly authorized to enter into this Agreement and each hereby agrees on behalf of Client to the provisions hereof.

**The Service**
Bank shall provide the Commercial Card Service (the Service) to Client, and Client shall utilize the Service in accordance with this Agreement and the Commercial Card Terms and Conditions (the Terms and Conditions).

**Service Documents**
Client acknowledges that it has received the Account Fee Schedule (the Fee Schedule), and agrees that its use of the Service shall be governed by the following Terms and Conditions and the Fee Schedule, which is incorporated herein by reference (together, the Service Documents). The Service Documents may be revised by Bank at any time, with or without notice to Client, and Client shall in all cases be bound by the Service Documents as in effect from time to time. If there is any conflict between the Terms and Conditions and the Fee Schedule, the Terms and Conditions shall govern, but only to the extent reasonably necessary to resolve such conflict. This Agreement shall be effective when accepted by Bank.

### TERMS AND CONDITIONS

*1. Establishment of Account and Issuance of Card(s)*

Upon receipt of Client's signed Agreement, Bank shall establish a commercial card account (the Account) for Client and issue one or more cards associated with the Account (the Card or Cards) to employees or agents of Client (Cardholders) designated by Client from time to time in accordance with Bank's established procedures. Each Cardholder may use the Card issued to such Cardholder under the Account solely for the business or commercial purposes of Client. Bank shall issue each Card for the original term indicated on the Card unless the Card or the Account has been cancelled by Bank (i) at the request of Client or (ii) pursuant to the Terms and Conditions. Unless and until a Card is cancelled in the manner specified, Bank shall continue to issue renewal or replacement cards.

*2. Cancellation of Individual Card(s) by Client*

If Client wishes to terminate a Cardholder's use of a Card, Client must notify Bank's customer service center by telephone at 1-800-375-1747 between the hours of 7:00 a.m. and 9:00 p.m. Monday through Friday, and between the hours of 8:00 a.m and 5:00 p.m. Saturday through Sunday, and request that the Card be cancelled, effective immediately. No such notice shall be effective against Bank until Bank has received it and has had a reasonable opportunity to act on it.

*3. Promise to Pay.*

Client promises to pay on demand all indebtedness incurred in connection with the Account, by the use of any Card or otherwise, whether authorized or unauthorized, until such time as a cancellation of the Card, or a termination of the Account by Client has taken effect. Client acknowledges that the Bank shall not be liable for any use or misuse of the Card and that MasterCard provides at no cost to the Client the MasterCoverage Program, a liability protection program, to which unauthorized use of the Card may be subject. Cancellation of a Card or termination of the Account shall not excuse the obligation of Client to pay for all purchases or other charges incurred against or in connection with the Account through the effective time of the cancellation or termination.

4.  *Security Interest*

To secure all amounts owed to Bank or to any affiliates of Bank hereunder, whether now existing or hereafter arising, Client pledges a security interest in all of Client's now existing and hereafter arising accounts, inventory, equipment, general intangibles, chattel paper, instruments, documents and all products and proceeds of the foregoing wherever any of the same may be located, including without limitation, collateral of any nature hypothecated pursuant to other instruments evidencing indebtedness of Client to Bank or any affiliate of Bank or assets of any nature held by Bank or any affiliate of Bank for Client. Client agrees that this Agreement may be filed as a financing statement to perfect Bank's interest in the stated property.

5.  *Making Payments; Security Interests; Right to Set Off*

Payment shall always be due on or before the Payment Due Date shown on the Account Statement. Client must pay in full the amount specified on the Account Statement. Client agrees to make all payments by check or other negotiable instrument drawn on a U.S. financial institution located in the U.S. or by money order. Payments must be denominated in U.S. dollars.

All payments, except disputed payments, must be mailed or delivered to Bank at the remittance address indicated on the front of the Account Statement (**Payment Address**). Any payments received after 3:00 p.m., Eastern Time, on any business day will be credited on the next business day. Credit to any Card or the Account may be delayed for up to 5 days if the payment is (a) not made in U.S. dollars drawn on a U.S. financial institution located in the U.S. or by money order, or (b) not accompanied by the top portion of the Account Statement. Delayed crediting may cause Client to incur additional fees and finance charges. Payments may *not* be made, and shall *not* be deemed received by Bank, if made at or to any location other than the Payment Address.

Bank reserves the right to apply payments and other credits to the Account in any manner that Bank may choose in its sole discretion. All credits for payments to the Account are subject to final payment by the institution on which the item of payment was drawn. Although Bank may post payments as of the date Bank receives them, the Available Credit Limit may not be restored for up to 5 days after Bank receives the payment.

Client hereby grants to us a security interest in Client's deposit accounts (as defined in UCC Article 9) with Bank and any deposit accounts Client has with any one or more direct or indirect subsidiaries of Fifth Third Bancorp and its successors and assigns (a "Bank Affiliate"). Client agrees that the security interest it has granted to Bank by this Agreement is consensual and is in addition to our right of set off. Client also grants Bank the right, on Bank's own behalf and on behalf of any Bank Affiliate to set off against any and all funds in Client's deposit accounts to pay any obligation owed by Client hereunder. Client acknowledges that the obligations that are secured by the Bank's security interest and set off rights granted hereby include all present and future obligations owed by Client to any Bank Affiliate. Client agrees that Bank may act in accordance with instructions received from any such Bank Affiliate regarding disposition of any funds in Client's deposit accounts without any further consent or action by Customer. Bank may exercise its right of set off and its security interest without recourse to other collateral, if any, and even if such action causes Client to lose interest, have transactions drawn on its account returned, incur an early withdrawal penalty or any other consequence. If Bank exercises its right of set off, Bank will notify Client to the extent required by applicable law. Bank's right of set off and its security interest may not apply to Client's account if the right of set off or the granting or exercise of a security interest in Client's account is prohibited by applicable law.

6.  *Monitoring for Unauthorized Use*

Client shall have responsibility for monitoring the use of the Cards and the Account and for requesting Bank to cancel any Cards issued to employees who are terminated, any lost or stolen Card(s), any Cards that are not used in accordance with Bank's or Client's guidelines, and any Cards that are used for fraudulent purposes. All communications by Client to Bank in connection with lost or stolen Cards, fraudulent use of Cards or requests for Card cancellations must be made by telephone to Bank's customer service center at 1-800-375-1747. Bank shall be liable for unauthorized or fraudulent use of any Card only to the extent that Bank has been given adequate telephonic notice of Client's request to cancel the Card and has had a reasonable opportunity to act on that request.

7.  *Credit Limit*

Bank will establish an aggregate credit limit for the Account. Such credit limit will be communicated to Client at the time of implementation or such earlier time as Client requests this information. Client will be responsible for specifying a credit

limit for each individual Card or class of Cards it requests for its employees. Bank may refuse to authorize any transaction against a Card that would bring the total amount outstanding against the Card or against the Account as a whole to a level that would exceed the relevant credit limit(s).

If Bank determines in its sole discretion to authorize or accept a transaction on the Account or on a Card that would exceed Client's credit limit for the Account or for the Card, Bank shall not be liable for doing so. In such an instance, Client shall, upon the request of Bank, pay immediately in full the entire amount of the overlimit transaction, together with any overlimit charges and other related fees provided for in the Fee Schedule.

### 8. *Bank Discretion to Change Credit Limits*

Bank may from time to time and in its sole discretion (i) change the Account's or any Card's credit limit(s), (ii) reduce the Account or Card credit limit to $0, (iii) cancel the Card or close the Account, or (iv) limit the number and/or amount of transactions on the Card or the Account based on an evaluation of various factors, including Client's credit history and ability to repay amounts owed in connection with the Account. Bank will notify Client promptly in the event Bank decides to take such action on the Account.

### 9. *Fees*

Any finance charges, fees and other amounts, including penalties, assessed against the Account will be posted as direct charges to the Account and will count against the applicable credit limit. Fees will be assessed at the rates set forth in the Fee Schedule, as such Fee Schedule may be amended from time to time in the sole discretion of Bank.

### 10. *Periodic Account Statements*

After the close of each monthly billing cycle, Bank will mail to Client an Account Statement, with transactions on each Card during the billing cycle itemized separately as subaccounts on the main Account. At the request of Client, Bank will also mail individual statement memos to each Cardholder at his/her respective address as it appears on the Bank's records.

The Account Statement will show all transactions that have been posted to the Account in connection with any Card since the last Account Statement, any payments and adjustments to the Account, any fees charged to any Card or the Account, any finance charges (if applicable), the outstanding balances on each Card and on the Account and the Payment Due Date.

### 11. *Discrepancies*

If there is a discrepancy between Client's records and the information shown on any Account Statement or other confirmation, Client shall notify Bank within 15 calendar days after Client receives such Account Statement or confirmation, or such greater amount of time as may be required by applicable law. If Client fails to notify Bank within such 15-day period, Client shall be precluded from asserting the discrepancy against Bank, and Bank shall not be liable for any loss (including interest charges accrued on Client's account) resulting from Client's failure to notify Bank, except as otherwise provided by law. All entries in Bank's books, records and accounts shall constitute conclusive evidence of transactions unless Client furnishes proof of manifest error.

### 12. *Annual Participation Fee*

Client agrees to pay to Bank an annual participation fee in the amount specified on the Fee Schedule upon the issuance of each Card and annually thereafter. Card annual fees will be charged to the Account. The annual participation fee may be increased or decreased by Bank from time to time, in its sole discretion. The annual fee will be deemed to be fully earned when paid and is not refundable with respect to any Card terminated during the year for which the fee has been assessed unless Bank shall otherwise agree.

### 13. *Foreign Currency Transactions*

To convert transactions made in foreign currencies into U.S. dollars, the relevant card association (or its affiliate) (Card Association) will use its then-current currency conversion rates and the procedures established by such Card Association in its sole discretion. Currently, the currency conversion rate used to determine the transaction amount in U.S. dollars is generally either a wholesale market rate or a government-mandated rate in effect on the date of the conversion, increased by the applicable conversion charge determined by the Card Association. The currency conversion rate used on the conversion date may differ from the rate in effect on the date Client or any Cardholder used his/her Card or the Account.

### 14. Delay in Enforcement

Bank may at any time and in its sole discretion delay or waive enforcing any of its rights or remedies under the Agreement or under applicable law without losing any of such rights or any other rights or remedies. Even if Bank does not enforce its rights or remedies at any specific time, Bank may enforce them at a later date. For example, Bank may accept late payments or payments that are marked "payment in full" or with other restrictive endorsements without losing any of its rights under the Agreement or applicable law.

### 15. Default

Subject to applicable law, Client shall be in default under the Agreement and use of the Account may be revoked if any one of the following occurs: (a) Client becomes generally unable to pay its debts, (b) Client uses a check or instrument for payment which is dishonored, (c) any other creditor tries by legal process to take Client's monies in Bank's possession, (d) a petition is filed or other proceeding is commenced by or against Client under the federal bankruptcy act or any other applicable federal or state insolvency laws, (e) Client provides Bank with any false or misleading information, (f) Client breaches any obligation under the Agreement, (g) Client is in default of any other credit agreement it has with Bank or any of Bank's affiliates, (h) Client fails to make a payment to any other creditor when due, or (i) Bank believes in good faith that Client's ability to pay or perform its obligations under the Agreement has been impaired. The payment of any fee charged by Bank will not cure the default that triggered the fee.

If Client is in default under the Agreement, Bank may in its sole discretion, subject to applicable law, (a) declare all or any portion of the outstanding balance on the Account to be immediately due and payable, (b) allow Client to repay the outstanding balance according to the terms of the Agreement, (c) immediately terminate the Account and all Cards issued on the Account, (d) reduce the Account credit limit or otherwise limit Client's ability to make transactions on the account, and/or (e) commence an action against Client to collect all amounts owed in connection with the Agreement. Client shall be liable for any court costs and reasonable attorneys' fees incurred by Bank in the collection of amounts due on the Account.

In connection with to the foregoing Client shall furnish to Bank, upon the latter's reasonable request, current financial information pertaining to the business of Client.

### 16. Termination

In the absence of an event of default on the part of Client, and subject to applicable law, Bank may terminate the Agreement upon 30 days' prior written notice to Client. The termination of the Agreement shall not affect Client's obligation to repay all amounts owed to Bank under the Agreement or in connection with the Account and the use of the Cards. Further, termination shall not release Client from any of its other obligations that arose or became effective prior to such termination. All provisions of the Agreement, including these Terms and Conditions relating to the parties' warranties, limitations of liability and indemnification shall survive the termination of the Agreement, as applicable. Upon termination of the Agreement, or at any time upon Bank's demand, Client agrees to surrender to Bank or to destroy all Cards that have been issued to Client or to any of Client's employees or agents.

### 17. Disclaimer of Warranties

Bank disclaims all warranties in connection with the Service, and any such warranties are hereby expressly excluded. Bank does not warrant that the Service shall be error free or that the use thereof shall be uninterrupted. CLIENT HEREBY WAIVES ALL WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

### 18. Changes to Terms and Conditions

These Terms and Conditions may be revised by Bank at any time, with or without notice to Client, and Client shall in all cases be bound by the Terms and Conditions as in effect from time to time. Any such changes to these Terms and Conditions shall generally be effective immediately, unless Bank is required by applicable law to provide Client with advance written notice of the proposed change. In such instances, the change shall be effective immediately following the effective date stated in such notice. Subject to applicable law, any such changes shall apply to the outstanding balance on the Account on the effective date of the change and to any future balances created after that date.

No change to these Terms and Conditions shall affect in any manner Client's obligation to pay all amounts owing to Bank under the Agreement.

### 19. Limitation of Liability

IN NO EVENT SHALL BANK BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, PUNITIVE OR INDIRECT LOSS OR DAMAGE THAT CLIENT OR ANY OTHER PERSON MAY INCUR OR SUFFER IN CONNECTION WITH THE SERVICE PROVIDED HEREUNDER, EVEN IF BANK HAS BEEN ADVISED OF THE POSSIBILITY THEREOF. Except to the extent required by law and subject to the limitations set forth below, Bank's liability in connection with the Service shall be limited to actual damages sustained by Client and only to the extent such damages are a direct result of Bank's gross negligence, willful misconduct or bad faith. Bank's aggregate liability for damages from any cause of action whatsoever relating to the Service shall be limited to the amounts paid by Client for the Service during the one-month billing cycle immediately preceding the date on which the damage or injury giving rise to such cause of action is alleged to have occurred or such fewer number of days as the Agreement has been in effect. Bank shall not be liable for (a) any loss, damage or injury caused by any act or omission of any third party, whether or not such third party was chosen by Bank, (b) any charges imposed by any third party, or (c) any loss, damage or injury caused by any failure of the hardware or software used by a third party to provide the Service to Client. In addition, Bank shall not be responsible for, or incur any liability to Client for, any failure or delay in carrying out any of Bank's obligations under the Agreement, including these Terms and Conditions, if such failure or delay was caused by any third party.

### 20. Force Majeure

Bank shall not be responsible for, nor shall it incur any liability to Client for any failure, error, malfunction or any delay in carrying out any of its obligations under the Agreement if any such failure, error, malfunction or delay results from causes beyond Bank's reasonable control, including without limitation, fire, casualty, breakdown in equipment or failure of telecommunications or data processing services, lockout, strike, unavoidable accident, act of God, act of terrorism, riot, war or the enactment, issuance or operation of any adverse governmental law, ruling, regulation, order or decree, or an emergency that prevents such party from operating normally.

### 21. Client Indemnification Obligations

Client agrees to indemnify and hold Bank and its officers, directors, employees, shareholders and agents (collectively, "Representatives"), harmless from and against any and all losses resulting directly or indirectly from, or arising in connection with, (a) the Service or Bank's performance under the Agreement (other than losses that result from Bank's gross negligence, willful misconduct or bad faith), or (b) Client's violation of the Agreement, including these Terms and Conditions, or of its representations, warranties or covenants under the Agreement.

### 22. Information from Client

In providing the Service, Bank shall be entitled to rely upon the accuracy of all information and authorizations received from Client, Client's authorized agent or other person acting on Client's behalf, and upon the authenticity of any signatures purporting to be by Client, Client's authorized agent, or other person acting on Client's behalf. Client agrees promptly to notify Bank of any changes to any information or authorizations provided to Bank in connection with the Service, including any limitations Client desires to place on Client's authorized agents or other persons acting on Client's behalf, as applicable, and further agrees promptly to execute any new or additional documentation that Bank reasonably deems necessary from time to time in order to continue to provide the Service to Client. Client acknowledges that Bank may require a reasonable time period before being able to act upon any such change. In its sole discretion, Bank may rely on acts that purport to have been authorized by individuals Client previously authorized. Client agrees that Bank may refuse to comply with requests from any person until Bank receives documentation reasonably satisfactory to Bank confirming the person's authority.

### 23. Notice

Any written notice from Client to Bank shall be effective once Bank has received the notice and has had a reasonable opportunity to act thereon. Any written notice from Bank to Client shall be effective and deemed delivered when mailed to Client at its address as such address appears on Bank's records.

### 24. Assignment

The Agreement shall be binding upon and shall inure to the benefit of the parties and their respective permitted successors and assigns. Client may not sell, assign or transfer the Account or any of its rights or obligations under the Agreement. Bank may sell, assign or transfer the Account, or any balance due thereon, and its rights and obligations under the Agreement without prior notice to, or consent from, Client, which notice and consent are hereby waived.

## 25. Severability

In the event performance of the Service in accordance with the terms of the Agreement would result in a violation of any present or future statute, regulation or government policy to which Bank is subject, and that governs or affects the Service or any transactions contemplated by the Agreement, then the Agreement shall be deemed amended to the degree necessary to comply with such statute, regulation or policy, and Bank shall incur no liability to Client as a result of such violation or amendment.

If any provision of the Agreement is deemed to be illegal, invalid, void or unenforceable by a court of competent jurisdiction, or by any governmental agency with jurisdiction in such matter, such provision shall continue enforceable to the extent permitted by that court or agency, and the remainder shall be deemed stricken from the Agreement. All other provisions shall remain in full force and effect.

## 26. Compliance with Law

Bank and Client each agree to comply with all applicable state laws and regulations, laws and regulations of the United States, and other rules and orders to which they are subject, including without limitation, rules and regulations promulgated by any card associations or payment clearing systems used by Bank in providing the Service to Client.

## 27. Governing Law

The Agreement, including these Terms and Condition, shall be governed by, and construed in accordance with, the laws of the State of Ohio, without regard to Ohio's conflict of law principles, and with applicable federal laws and regulations.

## 28. Section Headings

The Section headings used in the Agreement are for convenience only, and do not in any way limit or define Client's or Bank's rights or obligations hereunder.

## 29. Commercial Card Maintenance – Internet Access

We offer the Fifth Third Direct Service as a means for clients to access their accounts and many of our Services via the Internet. Specifically, in connection with the Commercial Card Service we offer Commercial Card Management through Fifth Third Direct that allows you to access, administer and maintain your Commercial Card Account.

*Security Procedures.* "Security Procedure" means certain procedures, including the use of any personal identification number, test key, access code, password or other security device or authentication measure used in connection with a Service (collectively "Identification Codes"), personal identification numbers, passwords, logon identifications, tokens and other security systems or procedures designed to verify the origin of instructions, orders and other communications between us and Customer. Such security procedures, allow Client to authorize an administrator with complete authority on Client's behalf to i) designate personnel authorized to access services through Fifth Third Direct, ii) assign user ID's and passwords and accept and iii) act on all communication from Bank regarding Fifth Third Direct. Client understands that all access to, and use of the Services through Fifth Third Direct using such Security Procedures as Bank and Client mutually agree upon, (including an Access Device described below) is considered by Bank for all purposes and without further investigation to be authorized by the Client and Bank may act and rely upon all instructions or data transmitted to us in accordance with this Agreement to Bank through Fifth Third Direct using mutually agreed upon Security Procedures.

*Access Device.* Access to some of Bank's Services may require the use of a security token or other security or authentication device and related software (an "*Access Device*"). Proper use of an Access Device is part of the Security Procedure for these Services. The use of the Access Device is subject to the terms of use accompanying the Access Device or a separate license and may only be used for the purpose of accessing our Services. Client must carefully follow and observe the instructions provided with the Access Device and in particular, properly use, care for and maintain the Access Device. The Access Device is licensed for use only in the country of original installation and such other jurisdictions where such use is authorized under applicable law or license provisions. Client is prohibited from exporting, directly or indirectly, the Access Device or any technology in the Access Device. The use of an Access Device is intended to enhance the level of security in the Client's use of the Services but is not a guarantee that Client's accounts will be free of unauthorized transactions.

*Client's Responsibilities.* Client must ensure that its personnel uses the Services only as authorized and within the limits of the Client's permission or authority, and only for the specific Services for which such person shall have authority. Bank is not responsible if any person exceeds the limits of their authority or permission rights.

*Equipment and Software.* Client is responsible for having and maintaining at its expense proper functioning hardware, software and communication devices, Internet access and service necessary for use with Fifth Third Direct. Client must ensure that the software (excluding software provided by us), third party sites and related materials used by Client in accessing the Bank's Services are free of defects, bugs and viruses, software problems and other items of a destructive nature. Bank is not responsible for any of these problems.

*Legal Compliance.* Bank makes no representation or warranty that Fifth Third Direct is available or appropriate for use in countries other than the United States. Client is solely responsible for compliance with all laws (including foreign and domestic laws and regulations requiring governmental consent) applicable in jurisdictions where the Client conducts business.

*Intellectual Property.* All pages, screens, text, and other materials, and other works of authorship and material appearing on or utilized in connection with the Bank's websites, the names, trademarks, logos, slogans and service marks used, displayed and found on the Websites, the Access Devices (including related software, technology and documentation) and all other intellectual property relating to the Websites (collectively, *"Intellectual Property"*) are owned by and proprietary to the Bank or its affiliates, vendors or licensors, except as otherwise specified. No Intellectual Property may be copied, modified, reproduced, used in any way or publicly displayed, or distributed in any medium of expression without Bank's prior written permission.

*Warranty Disclaimer.* Bank's Internet access Services including Fifth Third Direct are provided "as is," and "as available." While the Bank's websites include features such as encryption and other data protection features, Client understands that the Internet is inherently insecure and that all data communications and transfers can be monitored, intercepted, rerouted, copied and read by others. Bank is not liable (i) if data transfers to or from the Bank through the websites are monitored, intercepted, rerouted, copied, or read or (ii) for the use of such data by others, or (iii) if privacy is not maintained. All material found on the Websites is provided "as is."

---

Guidelines for Completion:

- If Client is a corporation, then a duly authorized officer must sign this Agreement.
- If Client is a partnership, limited liability company, limited liability partnership or sole proprietorship, then all general partners and all active members of the company or the business organization must sign this Agreement unless Client's organizational or constituent documents specify otherwise.
- If Client is a governmental entity, the Treasurer must sign this Agreement, unless Client's charter specifies otherwise.
- Complete this Agreement in duplicate and provide one of the executed copies to Client.

Dated: 09-16-09　　　　　　　　　　　　　　ACCEPTED: 09-16, 2009

FORECLOSURE FREESEARCH, INC.　　　　　FIFTH THIRD BANK
(CLIENT'S LEGAL NAME)

By: BRAD GEISEN　　　　　　　　　　　　By: John Gullman

Name: [signature]　　　　　　　　　　　　Name: John Gullman

Title: PRESIDENT　　　　　　　　　　　　Title: Vice President

S:\Legal\Corporate Treasury Management\Commercial Card\Commercial Card Management\Commercial Card Agreement 9 07.DOC