**[Tagged]**



**ORDERED in the Southern District of Florida on May 8, 2014.**

Erik P. Kimball, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| FFS Data, Inc., | Case No.: 09-38395-EPK |
| Live Data Group, Inc., | (Jointly Administered) |
| Debtors._____/ | |

MEMORANDUM OPINION ON
MOTION OF IBERIABANK [ECF No. 890]

Is an explicit general release in favor of the debtor's principal on behalf of all parties with claims against the debtor, contained in a plan of reorganization confirmed long ago and never appealed, binding on a creditor that had actual notice of the general release?  In light of Supreme Court precedent and the plain language of the plan in this case, it is.  For the reasons stated more fully below, the Court will deny the motion by Iberiabank [ECF No. 890] for a determination that the confirmation order and plan of reorganization in this case do not release a particular claim against the debtor's principal.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and under its own confirmation order [ECF No. 826].  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137,

151 (2009). As the Court is asked to interpret its own confirmation order and the related plan of reorganization, this is a core matter under 28 U.S.C. § 157(b)(2). The following constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

The Court considers *Iberiabank's Motion For Determination That Confirmation Order And Discharge Injunction Do Not Release Mannino Guaranty Claim Against Non-Debtor Bradford R. Geisen Regarding Obligation That Has No Connection To The Debtors' Estates* [ECF No. 890; the "Motion"]. The Motion was accompanied by the *Iberiabank's Motion To Reopen Case Pursuant To 11 U.S.C. § 350* [ECF 889; the "Motion to Reopen"]. FFS Data, Inc. (the "Debtor") filed both a *Response* [ECF No. 893] and a *Supplemental Response* [ECF No. 902].

This chapter 11 case was commenced by voluntary petition on December 23, 2009 [ECF No. 1]. The chapter 11 cases of the Debtor and its affiliate Live Data Group, Inc. were jointly administered by order entered December 28, 2009 [ECF No. 15] and were later substantively consolidated under the order confirming the Debtor's plan [ECF No. 826]. This was a heavily litigated chapter 11 case. Certain parties in interest opposed the Debtor at every turn. At the time of entry of final decree, the docket comprised 852 items.

Iberiabank first appeared in this case, through counsel, on June 10, 2010 [ECF No. 153]. Iberiabank's primary interest in this case stems from the Debtor's guaranty in favor of Iberiabank of certain obligations of the Debtor's affiliate and landlord, Siena Realty Associates, LLC ("Siena") [*See* ECF Nos. 100 and 243.] The Debtor settled its claim dispute with Iberiabank and the settlement was approved by this Court. [ECF Nos. 307, 492 and 493.] However, counsel for Iberiabank continued to receive notice of all activity in this case.

The Debtor filed two plans of reorganization [ECF Nos. 107 and 243]. For purposes of this ruling, the text of the Debtor's two plans is identical. The first of these plans was filed on April 22, 2010. Although Iberiabank had yet to make an appearance in the case, it was soon represented by counsel who was duty bound to review the docket. In any case, the Debtor thereafter filed its *Debtor's Amended Plan of Reorganization* [ECF No. 243; the "Plan"), which was served via CM/ECF on counsel for Iberiabank. The Court conditionally approved the related disclosure statement on November 12, 2010 [ECF No. 309] and that order, the Plan and the related disclosure statement were duly served on counsel for Iberiabank [ECF No. 320]. Iberiabank does not dispute that it had actual notice of the Plan and an opportunity to object to the release and injunction provisions at issue here.

Leading up to confirmation, the Debtor was litigating with and negotiating with parties in interest on multiple fronts. The Plan eventually came before the Court for confirmation on March 4, 2011, almost five months after it was filed with the Court.

The Plan includes three provisions material to the Court's decision here, sections 8.13, 8.14 and 8.15. They read as follows:

**8.13** **Discharge of Debtor and Insider**

In exchange for releasing the Insider Claims totaling $1,000,817.30, and providing the New Value Payment, all holders of Claims agree to a general release of Bradford Geisen.

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan, or <u>its officer and/or director, Bradford Geisen</u>. Except as otherwise provided herein, (i) on the Effective Date, all such claims against the Debtor and <u>its officer and/or director, Bradford Geisen</u>, and Equity Interest (sic) in the Debtor shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, <u>or its officer and/or director, Bradford Geisen</u> any other or further

3

Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

### 8.14  Injunction Related to Discharge

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor <u>or its officer and/or director, Bradford Geisen</u>, or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor the Debtor (sic) <u>or its officer and/or director, Bradford Geisen</u> on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.*

### 8.15  Release by Holders of Impaired Claims.

*This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that the Debtor (sic) holders of Claims against the Debtor and Equity Interests in the Debtor may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019. In consideration of the obligations of the Debtor and the Reorganized Debtor under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, and Bradford Geisen's agreement to release the Insider Claims totaling $1,000,817.30, and providing the New Value Payment, the Debtor and each holder of a Claim against*

> *or Equity Interest in the Debtor shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 case or the conduct thereof, or this Plan.*

The term "Claim" is defined in Article I of the Plan in the broadest possible manner, consistent with 11 U.S.C. § 101(5). It is not limited to claims against the Debtor but rather is defined generically.

The related disclosure statement contains identical language and was also served on Iberiabank [ECF No. 244].

The first sentence of section 8.13 of the Plan provides an unequivocal general release in favor of Bradford Geisen, the Debtor's principal, binding on all holders of claims against the Debtor with adequate notice of the Plan. The remainder of section 8.13 hammers home the fact that all treatment accorded under the Plan is in exchange for release of any existing claims against the Debtor, its estate, and its principal, Mr. Geisen. Nothing in section 8.13 limits the scope of the release to claims relating in some way to the Debtor or its chapter 11 case.

Section 8.14 approaches the same release from the point of view of an injunction. It enjoins holders of claims against the Debtor from pursuing the Debtor or Mr. Geisen on any claim. Again, there is no limitation to claims relating to the Debtor or its bankruptcy case.

Sections 8.13 and 8.14 are designed to protect the Debtor and Mr. Geisen. In contrast, Section 8.15 extends to a broader group of "Released Parties", defined in Article I of the Plan to include "the Debtor and each of its respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals." Mr. Geisen's release of claims against the estate and provision of funds to facilitate reorganization are listed as consideration in section 8.15, but the release extends to numerous persons related to the Debtor and its bankruptcy effort other than Mr. Geisen. Unlike sections 8.13 and 8.14, the effect of section 8.15 is limited to claims "in any way relating to the Debtor, the Chapter 11 case or the conduct thereof, or this Plan." Section 8.15 thus includes language that Iberiabank would like the Court to read into sections 8.13 and 8.14. To the contrary, that sections 8.13 and 8.14 do not include such limiting language, but section 8.15 does, only bolsters the Court's view that the general release and injunction provisions in those earlier provisions have broader impact.

Prior to confirmation, one party in interest lodged an objection to confirmation of the Plan based, among other things, on the breadth of the release of claims against Mr. Geisen [ECF No. 795]. That objection, which was served on counsel for Iberiabank, specifically drew attention to section 8.13 of the Plan. The objection was withdrawn prior to confirmation. Nevertheless, at the confirmation hearing counsel for the Debtor made an offer of proof in the form of proposed testimony of Mr. Geisen, explicitly aimed at addressing the standards for non-debtor releases set out in *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002). [ECF No. 863, pp. 19-22.] The Court solicited objections to the proposed testimony and none were received. The Court asked if any party wished to cross-examine Mr. Geisen and no request was made. The proposed testimony of Mr. Geisen was accepted in support of confirmation of the Plan. In confirming the Plan, including the general release of Mr. Geisen, the Court cited *In re Transit Group, Inc.*, 286 B.R. 811

(Bankr. M.D. Fla. 2002), specifically noted the lack of objection to the proposed release and injunction, and ruled that absent objection there was no controversy necessitating further consideration by the Court. *Id*.  Although it had ample notice, Iberiabank did not attend the confirmation hearing.

The Court confirmed the Plan by order entered March 22, 2011 [ECF No. 826; the "Confirmation Order"].  Paragraphs 20, 21 and 22 of the Confirmation Order parallel sections 8.13, 8.14 and 8.15 of the Plan.  While the first, stand-alone sentence of section 8.13 of the Plan is not included in paragraph 20 of the Confirmation Order, the text of paragraph 20 of the Confirmation Order is more than sufficient to describe the general release in favor of Mr. Geisen.   The Confirmation Order was not appealed.

This is not the first time that Iberiabank has asked this Court to rule that a claim of Iberiabank against Mr. Geisen was not released by the Plan and Confirmation Order.  In March, 2013, Iberiabank filed a motion asking the Court to rule that its claim against Mr. Geisen based on his guaranty of the obligations of Siena was not released under the Plan [ECF No. 855]. At that time, Iberiabank made several arguments.  Iberiabank argued that the release of Mr. Geisen under the Plan violated the test for non-debtor releases set out in the seminal opinion on the issue, *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002), and a subsequent but no less exacting Florida decision, *In re Transit Group, Inc.*, 286 B.R. 811 (Bankr. M.D. Fla. 2002).  Iberiabank argued that Mr. Geisen's obligations under the Siena guaranty were not "explicitly and clearly identified in the governing provisions of the plan and confirmation order" and so the release was not effective as to the Siena guaranty claim, citing *In re Applewood Chair Co.*, 203 F.3d 914 (5th Cir. 2000). Iberiabank alternatively argued that the failure to specifically reference the claims against Mr. Geisen to be released under the Plan amounted to a lack of due process.  Iberiabank argued that the use of the phrase "its officer and/or director, Bradford Geisen" in section 8.13 of the

7

Plan meant that the Plan "clearly only discharges claims against him in his capacity as an officer or director of FFS Data."  In this vein, Iberiabank argued that Mr. Geisen's guaranty of the Siena debt was a personal obligation, not a debt incurred in his representative capacity, and thus was not released in the Plan.  Iberiabank argued that the Court lacked subject matter jurisdiction to confirm a Plan containing a non-debtor release of the scope argued by the Debtor.  Iberiabank argued that Mr. Geisen was not protected by section 8.15 of the Plan because Siena was not the debtor and Mr. Geisen's guaranty of the Siena debt was not implicated in this case.

   The Court held a hearing on Iberiabank's first motion on April 18, 2013, delivered an oral ruling that day [ECF No. 871], and entered an order denying the first motion on May 1, 2013 [ECF No. 866].  The Court ruled that section 8.13 of the Plan contains a general release of Mr. Geisen enforceable against all parties holding claims against the Debtor and that nothing in that provision would lead parties in interest to believe that the release was limited to claims relating to the Debtor or its bankruptcy case.  The Court ruled that sections 8.13 and 8.15 are independent provisions of the Plan, that section 8.15 does not limit section 8.13, and that in any case Iberiabank's claim against Mr. Geisen on the Siena guaranty is also released by section 8.15 because the claim is in fact a matter relating to the Debtor, the Debtor's chapter 11 case and the Debtor's confirmed Plan.  The Court cited *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009), stating that the only questions before the Court were whether the release contained in the Plan covered Iberiabank's claim against Mr. Geisen under the Siena guaranty and whether procedural due process was served.  The Court ruled that Supreme Court precedent does not require that each released claim be specifically identified, only that the text of the release, consistent with principles of contract interpretation, covers the claim in question.  The Court found that Iberiabank's claim against Mr. Geisen under the Siena guaranty plainly was covered by the explicit

general release contained in the Plan.  The Court ruled that the phrase "its officer and/or director, Bradford Geisen" in section 8.13 of the Plan, in light of the breadth of the first sentence of that provision and the nonsensical result of any alternative interpretation, was merely descriptive of Mr. Geisen's relationship with the Debtor, that it did not limit the scope of the release.  In response to Iberiabank's argument that the release did not satisfy the *Dow Corning* standard, and the challenge to the Court's subject matter jurisdiction to enter the Confirmation Order containing the release, the Court noted that Iberiabank had actual notice of the Plan and the requested release, it did not object to the release, that the release was approved years prior, that the Confirmation Order was never appealed, and that the Confirmation Order was *res judicata* with regard to the matter, prohibiting Iberiabank from challenging it.  For this analysis, the Court again pointed to the Supreme Court's decision in *Bailey*.  To argue that the release should not have been entered, or that the Court lacked subject matter jurisdiction to enter it, is an impermissible collateral attack on the Confirmation Order.  In any case, the Court ruled that as a result of the Debtor's potential liability for contribution to Mr. Geisen if Iberiabank pursued Mr. Geisen on the Siena guaranty, the Court did in fact have subject matter jurisdiction to enter the Confirmation Order as regards to the release of Mr. Geisen.  The Court's order on Iberiabank's first motion was appealed to the District Court.

      Thereafter, on September 18, 2013, Iberiabank filed the present Motion.  Unlike in Iberiabank's first motion, Iberiabank now presents only two arguments:  (1) a textual argument, that the release provisions of the Plan do not cover Iberiabank's claim against Mr. Geisen arising from a transaction not in any way involving the Debtor; and (2) a legal argument, derived from Fifth Circuit case law, that the provisions of the Plan are not sufficiently "specific" to cover the claim at issue.  Iberiabank did not raise any form of due process argument in the Motion, whether procedural or otherwise, except to the extent that

its reliance on Fifth Circuit case law can be understood as presenting some form of extra-procedural due process argument.

In its initial Response [ECF No. 893], the Debtor argued that the Court lacked jurisdiction to consider the present Motion in light of the pending appeal from the order denying Iberiabank's first motion. At an initial hearing on October 17, 2013, the Court ruled that, because of the different nature of the claims addressed in the order under appeal and the present Motion, it did not lack jurisdiction to hear the present Motion. Nonetheless, at the parties' request in light of ongoing settlement discussions, the Court continued the hearing to December 5, 2013. On December 3, 2013, the Debtor filed a Supplemental Response [ECF No. 902], joined by Mr. Geisen [ECF No. 903], arguing that the general release of Mr. Geisen in section 8.13 of the Plan is clear and unambiguous, that section 8.15 does not limit this release, and that the Fifth Circuit case law cited by Iberiabank is distinguishable. At the continued hearing on December 5, 2013, the parties requested a continuance to permit further settlement discussions.

On March 4, 2014, the District Court affirmed this Court's order denying Iberiabank's first motion [ECF No. 916]; *Iberiabank v. Geisen*, 506 B.R. 573 (S.D. Fla. 2014). The District Court considered two issues on appeal: (1) whether this Court erred in concluding that the phrase "its officer and/or director Bradford Geisen" in section 8.13 of the Plan was merely descriptive, having no impact on the extent of the release in that provision; and (2) whether this Court erred in determining that the Plan released Mr. Geisen from his personal guaranty of the Siena obligation. Addressing the first issue, the District Court ruled that the phrase "its officer and/or director Bradford Geisen" in section 8.13 of the Plan "is intended to tell everybody reading the release who Geisen is and that he had a relationship to the debtor and was therefore deserving of a release." *Iberiabank*, 506 B.R. at 577. The District Court further stated that "if Iberiabank wanted the release to be

10

limited to liability that Geisen incurred in his role as officer and/or director, they should have objected to the language as written and confirmed in the Plan.  However, in failing to do so, all holders of claims, including Iberiabank, agreed to a general release of Geisen." *Id*.  In the end, the District Court found section 8.13 of the Plan "clear and unambiguous". *Id*. n.1.  Addressing the second issue, the District Court ruled that the release in section 8.13 of the Plan effects a release of Iberiabank's claim against Mr. Geisen under the Siena guaranty, consistent with this Court's analysis based on the Supreme Court's guidance in *Bailey* (discussed below).  Iberiabank had argued that certain Fifth Circuit case law (also addressed below) lead to a different result.  The District Court ruled that even under such case law, which is not binding here, the outcome would be the same. *Id*. at 580-81.  This Court's order denying Iberiabank's first motion has been appealed to the Eleventh Circuit [ECF No. 921].

     The parties requested several more continuances of the hearing on the present Motion until it was clear that settlement was not in prospect.  The Motion was finally argued on April 10, 2014 [ECF No. 922].  At the hearing, Iberiabank elaborated on the arguments presented in the Motion.  Iberiabank argued that the only purpose for section 8.15 was to limit the effect of section 8.13 ("I don't see what purpose 8.15 could have in this plan, other than operating to limit the language of 8.13.").  Iberiabank argued that language in section 8.15 extending its effect only to claims relating to the Debtor, its chapter 11 case or the Plan, applied also to the release presented in section 8.13 ("So it's our position that the Mannino obligation was carved out from the release by the plain language of Section 8.15.").  Seemingly at odds with this argument, Iberiabank argued that the "inconsistency" between the language in sections 8.13 and 8.15 of the Plan necessitated the presentation of evidence regarding the intent of the parties.  Lastly, Iberiabank argued that the language in the Plan was not "specific" enough to encompass the claim in question.

Iberiabank argued that a creditor's attorney could not "have reasonably anticipated that this bankruptcy would attempt to deal with wholly unrelated obligations that do not involve the debtor in any way," referring to this as a "due process type argument."

Iberiabank's text-based argument finds no support in the Plan or the Confirmation Order. Sections 8.13 and 8.15 are intentionally separate provisions of the Plan. Section 8.13 extends only to the Debtor, its estate, and Mr. Geisen. Section 8.15 extends to the Debtor and a number of other parties related to the Debtor, including Mr. Geisen. These provisions overlap to some extent, but materially differ in their application. Section 8.13 provides a general release of any and all claims, and is bolstered by the parallel injunction in section 8.14. Section 8.15 releases a broader list of beneficiaries only from claims relating to the Debtor. That Mr. Geisen is included in the ambit of both does not mean that one limits the other. There is no "inconsistency" between these provisions. Sections 8.13, 8.14 and 8.15 of the Plan are clear and unambiguous.

In support of its argument that the provisions of the Plan are not sufficiently specific to cover Iberiabank's claim against Mr. Geisen, the movant cites *In re Applewood Chair Co.*, 203 F.3d 914 (5th Cir. 2000). *Applewood* is one of a series of decisions by the Fifth Circuit considering the *res judicata* effect of orders relating to confirmation of a chapter 11 plan.

In *Applewood*, the Bankruptcy Court had approved a sale of substantially all of the debtor's assets to a newly formed entity. 203 F.3d at 916. The sale of the debtor's equipment was subject to the secured debt of an entity known as Three Rivers. *Id*. The sale motion, approved by an order of the bankruptcy court, included this language: "Upon assumption, all claims of Three Rivers, with respect to the equipment, will be discharged and forgiven, as to all existing obligors, and NewCo will assume all of the existing obligors' obligations in connection with Three Rivers' claims and debts." *Id*. The plan of reorganization later confirmed in the case included this language: "The provisions of the

12

confirmed plan shall bind all creditors and parties in interest, whether or not they accept the plan and shall discharge the Debtor, its officers, shareholders and directors from all claims that arose prior to Confirmation." *Id*. at 919.  Long after the sale and confirmation of the plan, the buyer defaulted on the Three Rivers loan and Three Rivers pursued the debtor's principals on their guaranty. *Id*. at 916.  When the debtor's principals defended on the ground that confirmation of the debtor's plan released them, Three Rivers requested clarification from the Bankruptcy Court. *Id.*  The Bankruptcy Court ruled in favor of Three Rivers, finding that the sale and confirmation orders "contain insufficient language and were not intended to have the effect of releasing the individual indebtedness of [the debtor's principals] to [Three Rivers]." *Id*. at 917.  This ruling was affirmed on appeal to the District Court.

The Fifth Circuit in *Applewood* framed the question before it in terms of *res judicata*. *Id*. at 917 ("Whether Three Rivers is barred from pursuing its claims against the Spiveys by the doctrine of *res judicata*.").  Yet the court's analysis on the issue starts with the statement:  "The general rule is that a discharge in bankruptcy does not affect a guarantor's liability." *Id*. at 918.  The court explicitly states that its analysis of *res judicata* "should bear in mind the general rule codified in [section] 524," that the discharge affects only the liability of the debtor. *Id*. (citation omitted).  The Fifth Circuit then ruled that a provision of a confirmed reorganization plan that releases a person or entity other than the debtor is entitled to *res judicata* effect only if the provision in question "specifically" releases the claim against the non-debtor. *Id*. at 919.  Finding the above-quoted language from the plan insufficiently specific, the court declined to apply *res judicata* to the claim at issue. *Id*.  The Fifth Circuit did not analyze the text of the plan consistent with basic principles of contract interpretation.  Indeed, the Fifth Circuit seemingly did not examine

13

the text of the plan at all, in spite of the fact that it was ambiguous with regard to the extent of released claims, and the language of the sale order, which the court did review, appeared to support the conclusion that the claim in question was in fact not released. *See id*. at 919-20. Instead, the Fifth Circuit's analysis appears colored by a policy consideration, that non-debtors should not ordinarily be released under a chapter 11 plan. The *Applewood* decision, read on its own, stands for the proposition that a non-debtor release contained in a reorganization plan or confirmation order must specifically identify each claim released or it has no *res judicata* effect.

In a later decision, *FOM Puerto Rico S.E. v. Dr. Barnes Eyecenter Inc.*, 255 F. App'x 909 (5th Cir. 2007), the Fifth Circuit examined another instance of a non-debtor release in a chapter 11 plan. Citing *Applewood*, the court again began its analysis by stating the general rule that a guarantor is not discharged in the bankruptcy of the principal obligor. *Id*. at 911. The court undertook the same analysis as in *Applewood*, reviewing whether the language of the plan was "sufficiently specific" to cover the guaranty liability at issue. *Id*. at 911-13. In *FOM Puerto Rico*, however, the Fifth Circuit presented the question of specificity as part of the analysis of the fourth element of *res judicata* -- whether the same cause of action is at issue in both suits. *Id*. at 911, 913 (citations omitted). *FOM Puerto Rico* stands for the proposition that a claim against a non-debtor, allegedly released in a confirmed reorganization plan, must be clearly referenced in the subject release or there is not sufficient identity between the plan provision and the claim to satisfy the requirements of *res judicata*. Late in the decision the court states that it construes "a reorganization plan 'using traditional tools of contractual interpretation.'" *Id*. at 912 (citation omitted). Yet the Fifth Circuit's analysis of the language in the plan answers more than the question whether the subject guaranty claim is covered by the release. As in *Applewood*, the

14

analysis appears weighted against finding an effective release -- as though the debtor's burden was more than simply to show that the language of the plan, based on a contract analysis, encompassed release of the subject guaranty claim.

An order confirming a chapter 11 plan, and the plan itself, are accorded *res judicata* effect with regard to claims addressed therein. *In re Optical Techs., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005) (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990)). The provisions of a confirmed reorganization plan are interpreted using the traditional tools of contract analysis. *In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006). When the Court is called upon to construe the terms of a confirmed plan, the goal is to determine the meaning of the text. It is difficult to fit the Fifth Circuit's "specificity" requirement into this mold. The Fifth Circuit case law seems to require that the text be so unequivocally clear that affected parties would sit up and take notice. One can only wonder whether the Fifth Circuit requirement for "specificity" is in fact a form of Monday morning quarterbacking -- that a plan provision releasing a non-debtor should be viewed warily and construed narrowly as it should not be there in the first place. Yet whether a Bankruptcy Court may enter an order providing a non-debtor release, and whether it in fact did so, are two different questions.

If there was doubt that the Fifth Circuit's analysis of *res judicata* in the context of non-debtor releases was unnecessarily restrictive, that doubt was erased by the Supreme Court in *Travelers Indemnity Co. v Bailey*, 557 U.S. 137 (2009). The decision arises from the bankruptcy of Johns-Manville Corp. The debtor filed its petition under the weight of overwhelming claims allegedly resulting from exposure to asbestos sourced from the debtor. *Id*. at 140. Pursuant to a settlement with various insurers, the debtor's plan provided for the formation of a trust, funded by the insurers, to pay asbestos related claims. *Id*. at 140-

41. The trust was accompanied by a so-called channeling injunction, enjoining claimants from pursuing the insurers and limiting their recovery to the trust. *Id*. at 141-42. Both the order approving the debtor's settlement with its insurers and the order confirming the plan were appealed to the District Court and the Second Circuit and were affirmed. *Id*. at 142.

More than a decade later, parties started filing claims against Travelers Indemnity Co., one of the insurers that settled with the debtor. The claimants alleged statutory liability, arguing that Travelers had conspired to "hide the dangers of asbestos," as well as common law liability under the theory of failure to warn. *Id*. at 142-43. These claims sought recovery from Travelers not as a result of the debtor's actions, but based on "Travelers' own alleged violations of state law." *Id*. at 143 (citation omitted). Travelers defended, pointing to the confirmation order and the order approving the prior settlement. Travelers and the claimants reached a settlement and the Bankruptcy Court held an evidentiary hearing after which it approved the settlement. *Id*. at 143-45. The Bankruptcy Court ruled that the claims then subject to settlement, independent claims against Travelers not based on its provision of insurance to the debtor, had been barred by the earlier confirmation order and order approving the initial insurer settlement. *Id*. at 144-45. The Bankruptcy Court entered an order providing, among other things, that its confirmation order barred claims against Travelers "that directly or indirectly are based upon, arise out of or relate to Travelers['] insurance relationship with Manville or Travelers['] knowledge or alleged knowledge concerning the hazards of asbestos." *Id*. at 145. Certain parties objected to the settlement, including Chubb Indemnity Insurance Company. The matter was appealed to the District Court, which affirmed, and the Second Circuit, which reversed. *Id*. at 145-46.

16

The Supreme Court in *Bailey* began its analysis by pointing out that the confirmation order and the order approving the original insurer settlement had become final long ago, and whether the Bankruptcy Court had subject matter jurisdiction to enter the orders was no longer subject to review. *Id*. at 148. The Supreme Court noted that the issue of the Bankruptcy Court's jurisdiction could have been raised at any time the confirmation order and settlement order were under appeal, even *sua sponte* by the District Court or the Second Circuit, and that certain jurisdictional arguments had in fact been raised and rebuffed by the Second Circuit. *Id*. at 152. "But once the [confirmation and settlement orders] became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became *res judicata* to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Id*. (citations and internal quotations omitted). Even subject matter jurisdiction, the Supreme Court held, cannot be attacked collaterally except in rare situations not applicable there. *Id*. at 152-53 (citations omitted).

The Supreme Court specifically stated that it was not ruling whether the Bankruptcy Court had the power to enter the channeling injunction at issue in *Bailey*. *Id*. at 155. Such a ruling would of course implicate 11 U.S.C. § 524 and the general rule that non-debtors are not protected by the discharge. *Id*. Because the confirmation and settlement orders were final years before, the issue was not before the court.

The remainder of the Supreme Court's analysis in *Bailey* is devoted to determining whether the injunction issued by the Bankruptcy Court covered the subject claims against Travelers. Particularly telling for purposes of this decision, the Supreme Court's review of the scope of the injunction in *Bailey* shows it to be astoundingly broad. The injunction

covered not just claims against Travelers based on Travelers' insurance relationship with the debtor, Manville. The injunction also prohibited actions that seek to recover from Travelers "for improper use of information that Travelers obtained from Manville as its insurer," thus protecting Travelers from claims arising from Travelers' knowledge of the hazards of asbestos even if such claims have nothing to do with the debtor. Amazingly, the court suggested that the injunction may even be broader than that, but that this was as far as the court needed to go to address the claims at issue. *Id*. at 149. In response to the argument that there may be evidence that before entry of the confirmation and settlement orders some parties in interest believed the injunction to relate only to claims "derivative of Manville's liability," the Supreme Court stated: "But be that as it may, where the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect." *Id*. at 150 (citation omitted). The Supreme Court remanded the matter to the Second Circuit, but only because Chubb had argued that it had not received sufficient notice of the bankruptcy orders and the issue had not been addressed below. *Id*. at 155-56.

The Supreme Court in *Bailey* provides clear guidance for this case. Where, as here, a confirmation order is final and no longer subject to appeal, it and the plan incorporated into it are entitled to *res judicata* effect. This Court must answer only two questions: (1) whether Iberiabank had adequate notice of the Plan terms and opportunity to object; and (2) whether the language of the Plan and Confirmation Order cover Iberiabank's claim against Mr. Geisen. Iberiabank concedes that it had notice of the Plan and its terms. Iberiabank had a reasonable opportunity to object to the Plan and did not. The language of the Plan is clear and unequivocal, and must be given its apparent effect. Mr. Geisen was released of the claim of Iberiabank addressed in the Motion. The Court will enter a separate order denying the Motion, consistent with this Memorandum Opinion.

###

Copies furnished to:

Sean T. Cork., Esq.

*Sean T. Cork, Esq. is directed to serve copies of this Memorandum Opinion upon all interested parties and to file a certificate of service with the Court.*